## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DUSTIN S. KOLODZIEJ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:10-cv-02012-JEC |
| | § | |
| JAMES CHENEY MASON AND | § | JURY DEMANDED |
| J. CHENEY MASON, P.A., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO TRANSFER THIS CASE TO THE MIDDLE DISTRICT OF FLORIDA UNDER 28 U.S.C. § 1404(a), AND MEMORANDUM OF LAW IN SUPPORT**

Defendants James Cheney Mason and J. Cheney Mason, P.A. move to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue. Defendants do not have sufficient minimum contacts with Georgia to be subject to personal jurisdiction in this forum. Venue is improper because Defendants do not reside in this district and no other venue fact permits venue in this district. Alternatively, Defendants move to transfer this case to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).

## I.   <u>Facts Pertaining to Jurisdiction and Venue</u>

The following facts are set out in the Declaration of James Cheney Mason in Support of Defendants' Motion to Dismiss (herinafter the "Mason Decl."), filed as an attachment to this motion:

1.     James Cheney Mason is a resident of the State of Florida and lives and works within the geographic area that is under the jurisdiction of the United States District Court for the Middle District of Florida.

2.     J. Cheney Mason, P.A. is a professional association organized under the laws of the State of Florida and is the law firm and legal entity through which James Cheney Mason engages in the practice of law.  The principal place of business for J. Cheney Mason, P.A. is Orlando, Florida, within the jurisdiction of the United States District Court for the Middle District of Florida.  In the balance of this motion, James Cheney Mason and J. Cheney Mason, P.A. may be jointly referred to as either "Mason" or "Defendants."

3.     Mason has never had a place of business in Georgia, has never registered to conduct business in Georgia, has never applied to become a member of the State Bar of Georgia, is not licensed to practice law in Georgia, does not solicit business in Georgia, and does not regularly transact business in Georgia. Mason has never represented any residents of Georgia.

4.     Mason has never contracted to supply services, goods or things in or to Georgia.

5.     Mason has never caused tortious injury by an act or omission in Georgia.

6.     Mason has never caused tortious injury in Georgia by an act or omission outside the State of Georgia.

7.     Mason has never targeted any advertising to residents of Georgia by way of television, radio, direct mail, catalogs, Internet, newspapers, or any other advertising media.

8.     Mason has never engaged in any persistent, continuous, or systematic course of conduct in Georgia.

9.     Mason has never derived revenue from goods sold, used or consumed in Georgia.

10.     Mason has never furnished or sold any goods or services, either directly or through a distributor, with the expectation or intent that such goods or services be delivered to residents of the State of Georgia.

11.     Mason has never owned, used, or possessed any interest in any real property located in Georgia.

12.     Mason has not and does not maintain a Georgia address, office, telephone listing, bank account, or registered agent.  Apart from a few appearances in federal court years ago on behalf of non-Georgia residents, as described in his Declaration, Mason has never sent any officers, directors, managers, associates, partners, staff members, employees, or agents to Georgia for any business purpose.

13.     Mason's website www.jcheneymason.com is a passive website that provides general information about Mr. James Cheney Mason, the nature of his law practice, and his professional address and telephone number in Orlando, Florida.

14.     Mason is not required to pay taxes in the State of Georgia.

15.     Mason does not have any licenses issued by any governmental agency of the State of Georgia.

16.     Mason does not purposefully direct any business activities at residents of Georgia and, apart from a few appearances in federal court years ago on behalf of non-Georgia residents, as described in his Declaration, Mason has never purposefully availed himself of the privilege of conducting business activities within the State of Georgia.

17.     Mason has never had any dealings or communications of any kind with the Plaintiff, other than a brief exchange of letters related to the claims that Plaintiff is making in this lawsuit.

18.     Plaintiff's claim in this case is based upon an alleged "challenge" made in the course of an edited interview that appeared on "Dateline NBC," a weekly newsmagazine broadcast by NBC.  The so-called "challenge" was not made or intended as an offer to enter into a contract or other business arrangement with anyone, but rather was in the nature of a jest or hyperbole, in that it was a rhetorical comment intended to make light of the prosecution's theory in one of Mason's cases by emphasizing the impossibility of that theory.  Moreover, the brief excerpt as broadcast by NBC was not the original statement actually made by Mason, but was an NBC-edited "cut-and-paste" version that combined snippets of two different statements taken from a significantly longer interview.

19.     Although the rhetorical nature of the comment is apparent even in the edited version that was broadcast by NBC, in the context of the complete interview (which NBC chose not to broadcast) it is clear not only that the comment was rhetorical in nature, but that it was made with reference to the prosecution in that case, not to the general public.

20.     The case that was the subject of the Dateline interview was a murder case involving Nelson Serrano, an Ecuadorean businessman and nationalized U.S. citizen who was extradited from Ecuador to Florida for trial.  The alleged murders took place in Bartow, Florida, and the trial was in Polk County Circuit Court, also in Bartow, Florida.

21.     The interview in question took place in Lakeland, Florida, which is situated in the Middle District of Florida.  NBC later edited the interview, without Mason's knowledge, and NBC alone decided what, if anything, to broadcast. Mason had no role in the editing of the interview, in the decision of whether to broadcast the interview, or in deciding what part of the interview to broadcast.

22.     Plaintiff Dustin Kolodziej did not contact Mason before doing any of the acts alleged in his complaint, but acted unilaterally and without Mason's knowledge.  The first contact Mason ever had with Plaintiff was when Plaintiff sent Mason a demand letter seeking payment of $1,000,000.00.

## II.     This Case Should Be Dismissed for Lack of Personal Jurisdiction.

### A.     Legal Standard

The issue of personal jurisdiction is a question of law.  *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1217 (11th Cir. 2009).  On a motion to dismiss for lack of personal jurisdiction, "the plaintiff, has the burden of establishing a

prima facie case of personal jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006) (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1268-69 (11th Cir. 2002)); *Goforit Entm't LLC v. Digimedia.com L.P.,* 513 F. Supp. 2d 1325, 1328 (M.D. Fla. 2007); *see also Oldfield,* 558 F.3d at 1217 ("It goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present."). "A prima facie case [of personal jurisdiction] is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Stubbs,* 447 F.3d at 1360 (citing *Meier,* 288 F.3d at 1269).

"Where ... the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.*

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts." *Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 855 (11th Cir. 1990) (citing *Alexander Proudfoot Co. World Headquarters v. Thayer,* 877 F.2d 912, 919 (11th Cir. 1989)). A court must first "examine the jurisdictional issue under the state long-arm

statute." *Id.* Then, the court must "ascertain whether or not sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotations omitted). "Only if both prongs of the analysis are satisfied may a federal ... court exercise personal jurisdiction over a nonresident defendant." *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990).

The Eleventh Circuit recently revisited the way this analysis must be done in light of pronouncements by the Georgia Supreme Court:

> Whereas we have previously understood the Georgia long-arm jurisdictional analysis to merge into a single, coextensive procedural due process analysis, the Georgia Supreme Court has since made clear the independent importance of the statute. In *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa,* 279 Ga. 672, 620 S.E.2d 352, 355-56 (2005), the Georgia Supreme Court held that a trial court must engage in a separate, literal application of the Georgia long-arm statute in addition to a due process inquiry in deciding whether personal jurisdiction exists over a nonresident defendant. We now conform the rule in this circuit to the state law as announced by the Georgia Supreme Court.

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1254 (11th Cir. 2010). Accordingly, a plaintiff must independently establish that the exercise of personal jurisdiction satisfies both the provisions of the Georgia long-arm statute and the constitutional requirements of due process.

1. *The Georgia Long-Arm Statute*

Plaintiff Kolodziej asserts only one claim in this case: a claim for breach of contract.   Accordingly, the only section of the Georgia long-arm statute that applies here is the first, which provides:[1]

> A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
>   (1) Transacts any business within this state; . . . .

O.C.G.A.  §  9-10-91(1).   To establish personal jurisdiction under this section, therefore, Plaintiff must show that his claim arises from business transacted by Defendants in Georgia.

As is clear from the Declaration of James Cheney Mason filed in support of this motion, the only "business" ever transacted in this state by either Defendant was the few times, years ago, when Defendant Mason appeared in federal court here on behalf of clients who were not residents of Georgia.  It is clear on the face of Plaintiff's complaint, however, that his claim does not arise out of any of those

---

[1] Sections 2 and 3 of the Georgia long-arm statute involve only tort claims; section 4 relates to the ownership, use, or possession of real property within the state; and section 5 concerns actions for divorce.  *See* O.C.G.A. § 9-10-91(2)-(5).

cases.[2]   Rather, the claim allegedly arises out of statements made by Defendant

Mason in an interview on "Dateline NBC," a weekly newsmagazine similar to

CBS's "60 Minutes" and ABC's "20/20" programs.

Plaintiff alleges that "[t]his case arises out Mason's representation of Nelson

Serrano in his capital-murder trial."  (Pl.'s Compl. ¶ 9, Dkt. # 1.)[3]  That is not

really accurate, however, as the complaint as a whole shows that Plaintiff's claim

actually arises out of statements allegedly made in the later Dateline interview.

The interview took place in Lakeland, Florida, by an interviewer living in Delray

Beach, Florida.  (Mason Decl. ¶¶ 28-29.)  Moreover, the Serrano trial was in Polk

County Circuit Court in Bartow, Florida.  (*Id.* ¶ 27.)  The murders also occurred in

Bartow, Florida.  (*Id.*)  Defendants reside in Orlando, Florida, and Plaintiff resides

---

[2] Even if it had, Plaintiff could not base personal jurisdiction on those federal court appearances.  As the Eleventh Circuit has noted, the Georgia Supreme Court has adopted the "government contacts" exception to the exercise of personal jurisdiction under Georgia's long-arm statute, holding that where a nonresident's sole contact with Georgia is with a governmental entity located within Georgia, that contact is insufficient to justify the exercise of personal jurisdiction over that nonresident, even when the claim allegedly arises out of that contact.  *Lamb v. Turbine Designs, Inc.,* 240 F.3d 1316, 1317 (11th Cir. 2001).  Because the federal courts are one of the three co-equal branches of the federal government, appearances before those courts may not be used to establish personal jurisdiction.

[3] For simplicity, the Complaint will be referred to hereafter simply as "Pl.'s Compl."

in Texas.  (Pl.'s Compl. ¶¶ 1-3.)

Accordingly, none of the parties to this case is a Georgia resident and none of Defendant's statements allegedly giving rise to the claim in suit occurred in Georgia.  In short, Plaintiff does not allege any acts by Defendants that could constitute the transacting of business in Georgia by either Defendant.

The only alleged contact with Georgia was by Plaintiff Kolodziej himself, who alleges that he went to Georgia "to accept the challenge."  (Pl.'s Compl. ¶ 18.) Even taking that allegation as true for purposes of this motion, it does not constitute the transacting of business in Georgia *by Defendants*.  It is uncontroverted that the interview where the alleged "challenge" was made occurred in Florida, and that Plaintiff was in Texas when he saw it.  (Pl.'s Compl. ¶ 17.)  If he later traveled to Georgia, he did it entirely on his own.  He did not contact Defendants before doing it, but acted unilaterally and without their knowledge.  (Mason Decl. ¶ 31.)  That contact may not form the basis of personal jurisdiction over Defendants, as it is settled that personal jurisdiction over a nonresident defendant may not be created by "the unilateral activity of a third person." *Madara,* 916 F.2d at 1516; *see also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the

requirement of contact with the forum State.").

Plaintiff therefore cannot satisfy the Georgia long-arm statute because he cannot show that the claim in suit arises from any business transacted in this state by Defendants.   For many of the same reasons, Plaintiff cannot show that Defendants have sufficient minimum contacts with Georgia to satisfy due process requirements.

2. *Due Process*

 "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield,* 558 F.3d at 1220 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).   A nonresident defendant's contacts with a forum state may give rise to either "general" or "specific" personal jurisdiction. *See Helicopteros,* 466 U.S. at 414 nn.8 & 9.

Plaintiff does not assert that the Court has general personal jurisdiction over Defendants, nor could he credibly do so in light of the facts established by Mason's Declaration.   Plaintiff instead asserts that the Court has specific personal jurisdiction over Defendants.   (Pl.'s Compl. ¶ 5.)   Regardless of the "general" or

"specific" nature of a nonresident defendant's contacts with a forum state, however, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson,* 357 U.S. at 253. Personal jurisdiction over a nonresident defendant may not be based on "random, fortuitous, or attenuated contacts ... or because of the unilateral activity of a third person." *Madara,* 916 F.2d at 1516 (internal citations omitted); *see also Hanson,* 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

"Once it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Such "fairness factors" may include the burden on the defendant of litigating in the foreign forum, the interests of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's

interest in obtaining the most efficient resolution of controversies, and the states' shared interest in furthering substantive social policies. *Burger King,* 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

### B.      Specific Jurisdiction Is Not Present Here.

The term "specific jurisdiction" "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *Oldfield,* 558 F.3d at 1221 n.27. "In a case involving specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria: they 'must be related to the plaintiff's cause of action or have given rise to it;' they must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum;' and they 'must be such that the defendant should reasonably anticipate being haled into court there.'" *Sloss Indus. Corp. v. Eurisol,* 488 F.3d 922, 925 (11th Cir. 2007) (quoting *McGow v. McCurry,* 412 F.3d 1207, 1214 (11th Cir. 2005)). Plaintiff's claim fails on all three points, as well as on the fairness factors listed above.

1. *Relatedness*

As to the first criterion, Plaintiff's claim neither relates to nor arises out of Defendants' contacts with Georgia. As discussed above, all of Defendants' acts

that are alleged to give rise to that claim occurred in Florida.  The only contact with Georgia was by *Plaintiff* himself, without Defendants' knowledge.  But as already shown, the unilateral activity of someone like Plaintiff who claims some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.  *Hanson*, 357 U.S. at 253; *Madara,* 916 F.2d at 1516.

2. *Purposeful Availment*

As to the second criterion, Defendants have not "purposefully availed" themselves of the benefits of conducting business in Georgia in connection with the claim in suit.  As discussed in connection with the Georgia long-arm statute, Plaintiff's claim does not grow out of any business transacted by Defendants in Georgia.  All of Defendants' acts occurred in Florida.  Once again, the only contact with Georgia was the unilateral action of Plaintiff, done without Defendants' knowledge.  Even apart from the basic principle that the unilateral activity of a third person may not be used to create personal jurisdiction over a defendant, the very notion of "purposeful availment" is inconsistent with basing personal jurisdiction on the actions of an adverse party that were done without the defendant's knowledge.

3. *Reasonable Anticipation*

As to the third criterion, Defendants could not reasonably have anticipated being haled into a Georgia court as the result of statements made in an interview in Florida concerning a Florida case, particularly by someone who is not a resident of Georgia, but who resided (and still resides) in Texas and saw the interview there. Indeed, the Court might well wonder why a Texas resident would bring a suit in Georgia for breach of an alleged contract with a Florida resident, when the suit could as easily have been filed in Florida, where both Defendants reside, where most of the key witnesses live, and where the alleged statements giving rise to the claim occurred.  Defendants suggest it is because Plaintiff wants to make the case as inconvenient as possible for Defendants to defend.[4]

4. *The "Fairness Factors"*

In addition to not having sufficient "minimum contacts" with Georgia to render Defendants subject to suit here, none of the "fairness factors" listed by the Supreme Court in *World-Wide Volkswagen*, noted above, support the exercise of

---

[4] It is worth noting in this regard that this is not the first suit filed by Plaintiff against Defendants asserting this claim.  Plaintiff initially filed suit in the Southern District of Texas, Civil Action No. 4:09-cv-1889.  Even though Plaintiff is a Texas resident, that suit nevertheless was dismissed for lack of personal jurisdiction over Defendants.  (A copy of that order is attached hereto.)  Here, by contrast, none of the parties has a connection with this forum.

personal jurisdiction in this case. For instance, the State of Georgia has no interest in adjudicating an alleged breach of contract dispute between a Texas resident and two Florida residents, with no injury suffered by Plaintiff in Georgia. *See Imageline, Inc. v. Fotolia LLC,* 663 F. Supp. 2d 1367, 1379 (N.D. Ga. 2009). In addition, there is no reason why bringing such a suit in Georgia would advance Plaintiff's interest in obtaining "convenient and effective relief." *Id.*

Similarly, maintaining such a suit in Georgia does nothing to advance the judicial system's interest in obtaining the most efficient resolution of controversies, or the states' shared interest in furthering substantive social policies. All of the above objectives are better accomplished by bringing the suit in the forum that has the strongest connection with the case, the Middle District of Florida. That is the district where Defendants reside; where the statements giving rise to the claim in suit were made; where the witnesses to the actual interview are to be found; and where the alleged breach of contract occurred.

Finally, there is the burden on Defendants of having to defend against a claim for a substantial sum in a forum to which they have no real ties. *See id.* All of the fairness factors therefore weigh strongly against asserting personal jurisdiction over the Defendants in this forum.

### III.   This Case Should Be Dismissed Because Venue Is Improper in This District.

This is a diversity case between a resident of Texas and residents of Florida. Plaintiff asserts venue in this district pursuant to the first clause of 28 U.S.C. § 1391(a)(2):

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in … (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .

Here, the pleadings and evidence show that "a substantial part of the events or omissions giving rise to the claim" did not occur in this district, but in Florida. Plaintiff alleges a cause of action for breach of contract between a *Texas* plaintiff and two *Florida* defendants that arose out of statements made by Defendant Mason in a Dateline NBC interview.  It is uncontroverted that the interview occurred in *Florida* concerning a Florida murder case.  Plaintiff claims it was the statements made in that Florida interview that gave rise to the contract.  He alleges that he accepted the contract by travelling from Texas to Georgia to perform, even though he did not tell the Defendants about it and they had no knowledge of it.  The first that Defendants knew anything about it was when Plaintiff sent demand letters to Defendant Mason in Orlando, Florida, seeking payment of $1,000,000.00. Plaintiff alleges the contract was breached when Defendants refused his demand

for payment.   Defendant Mason received Plaintiff's letters at his office in Orlando, and he responded by refusing those demands in letters written in, and posted from, his office in Orlando.  (Mason Decl. ¶ 24.)

On these facts, it appears that the "substantial part of the events or omissions giving rise to the claim" – the statements that allegedly gave rise to a contract, the demand for payment under the contract, and the alleged breach of contract resulting from the refusal to make payment – all occurred in Florida.  Because no other basis for venue has been asserted in this case, this action should be dismissed for improper venue.

## IV.   Alternatively, Under 28 U.S.C. § 1404(a), Venue Should Be Transferred to the Middle District of Florida.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The application of § 1404(a) to the facts and circumstances of this case calls for a transfer to the U.S. District Court for the Middle District of Florida.

The first factor to be considered is whether the proposed transferee forum is a district where the case "might have been brought."  *Tommy Bahama Group, Inc. v. The Walking Co.,* No. 1:07-CV-1402-ODE, 2007 WL 3156254, at *2  (N.D. Ga. Oct. 19, 2007).  It is indisputable that the Middle District of Florida qualifies under

28 U.S.C. 1391(a), the applicable venue statute in this diversity action.  Not only do both Defendants reside in the Middle District of Florida (*see* § 1391(a)(1):  "a judicial district where any defendant resides, if all defendants reside in the same State"); it is the only district in which Defendants are subject to personal jurisdiction (*see* § 1391(a)(3):  "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought").

Given that there is no jurisdiction other than the Middle District of Florida where Defendants are subject to personal jurisdiction, the § 1404(a) analysis could and should stop there.  However, consideration of the remaining factors under § 1404(a) – convenience of the parties and witnesses and the interests of justice – only serves to strengthen the argument that this case should be transferred to the Middle District of Florida.

The trial court is afforded considerable discretion in weighing those factors. *See England v. ITT Thompson Indus., Inc.,* 856 F.2d 1518, 1519 (11th Cir. 1988). The court has discretion to decide whether to transfer a case to another district based on an individualized "consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (internal quotation marks omitted).

While the federal courts typically accord a plaintiff's choice of forum considerable deference, *see In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989) (per curiam), "where the forum is not the home district for any of the parties involved in the action, plaintiff's original choice of forum is entitled to less weight." *Haworth, Inc. v. Herman Miller, Inc.,* 821 F. Supp. 1476, 1479 (N.D. Ga. 1992); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 102 S. Ct. 252 (1981) ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient.  When the plaintiff is foreign, however, this assumption is much less reasonable.").

Here, none of the parties is a resident of this district.  Plaintiff is a Texas resident, and both Defendants are Florida residents.  Moreover, this is the second time Plaintiff has filed this suit in a forum foreign to both Defendants.  The first suit filed by Plaintiff was in the Southern District of Texas, and it was dismissed for lack of personal jurisdiction over the Defendants.  Instead of filing in the district of Florida where Defendants reside, however, Plaintiff once again decided to file in a forum having no connection with any of the parties.  Under the circumstances, Plaintiff's choice of forum should be given little weight.

Turning to the question of convenience of the parties and witnesses and the interests of justice, nine factors typically are considered in this circuit:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). The Plaintiff's choice of forum already has been considered, so we will address the remaining factors.

> *(1) Convenience of the Witnesses, (2) Location of Documents and Other Sources of Proof, and (4) the Locus of Operative Facts*

At the heart of this lawsuit is the Dateline interview of Defendant Mason that took place in Lakeland, Florida, in the Middle District of Florida, where Mason resides and works. (Mason Decl. ¶¶ 2-3, 28.) The NBC employee who conducted the interview was Dennis Murphy, a resident of Delray Beach, Florida. (*Id.* ¶ 29.) Another person who was present at the interview, Mr. Robert Norgard, is a resident of Lakeland, Florida. (*Id.*) The NBC producer for the interview, Mr. Bob Gilmartin, is a resident of Scarsdale, New York. (*Id.*) The original tapes of the complete interview are under the custody and control of NBC News, which is based in New York, New York. (*Id.* ¶ 30.) Therefore, most of the key witnesses are located in Florida, and one is in New York. The locus of operative facts

likewise is centered in the Middle District of Florida, and relevant documents will be there and in New York.  By contrast, Defendants know of no witnesses, documents, or other sources of proof in the Northern District of Georgia.

*(3) Convenience of the Parties and (6) the Relative Means of the Parties*

None of the parties lives or works in Georgia.  Both Defendants reside in the Middle District of Florida, which accordingly is a far more convenient forum for them.  Plaintiff resides in Texas.  The Middle District of Florida and the Northern District of Georgia therefore are virtually equidistant from Plaintiff's place of residence.  Under the circumstances, the relative means of the parties is not really an issue, as Plaintiff would have to travel from Texas in either case.

*(5) The Availability of Process to Compel the Attendance of Witnesses*

Compulsory process will reach more of the key witnesses in the Middle District of Florida than in this district.  In fact, there appear to be no witnesses in Georgia who could be reached by compulsory process.

*(7) The Forum's Familiarity with the Governing Law*

Because the statements allegedly giving rise to a contract and the alleged breach of contract occurred in Florida, Florida law will govern Plaintiff's breach of contract claim.  Although federal courts often look to the laws of other states, a

Florida court will be more familiar with the application of Florida contract law, as the Florida courts regularly apply Florida law.

*(9) Trial Efficiency and the Interests of Justice Based on the Totality of the Circumstances*

All of the above considerations suggest that trial efficiency and the interests of justice would be better served by trying this case in the Middle District of Florida.  Because the claim in suit involves two Florida defendants based on acts that occurred in Florida and that allegedly violate Florida law, a Florida court naturally has a greater interest in resolving that dispute.  Moreover, there is no administrative advantage to be gained by trying this case in the Northern District of Georgia rather than the Middle District of Florida.  According to the Administrative Office of the United States Courts, the median time from filing to trial for civil cases in the Northern District of Georgia was 26.6 months in 2009, as compared to 22.6 months in the Middle District of Florida.  *See* http://www.uscourts.gov/uscourts/Statistics/FederalJudicialCaseloadStatistics/2009 /tables/C05Mar09.pdf.

Discounting Plaintiff's choice of forum for the reasons discussed above, *all* of the remaining convenience and fairness factors range from slightly favoring to strongly favoring a transfer of venue to the Middle District of Florida.  *None* of the factors weighs in favor of retaining the case in this forum.

## V.    Conclusion

For the reasons set forth above, Defendants request that the Court dismiss this action for lack of personal jurisdiction and improper venue, or, in the alternative, transfer the case to the United States District Court for the Middle District of Florida under 28 U.S.C. § 1404(a).

Dated:  August 13, 2010                    Respectfully submitted,

/s/Louis K. Bonham
Louis K. Bonham
Texas Bar No. 02597700
OSHA LIANG LLP
Two Houston Center, Suite 3500
909 Fannin Street
Houston, TX  77010
bonham@oshaliang.com
Phone: (713) 228-8600
Fax: (713) 228-8778

/s/Bret R. Hobson
Edward B. Krugman
Georgia Bar No. 429927
Bret R. Hobson
Georgia Bar No. 882520
BONDURANT, MIXSON & ELMORE, LLP
1201 W. Peachtree Street
3900 One Atlantic Center
Atlanta, Georgia 30309
krugman@bmelaw.com
hobson@bmelaw.com
Phone: (404) 881-4100
Facsimile:  (404) 881-4100

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF COMPLIANCE

Pursuant to Civil Local Rule 7.1(D), I certify that the foregoing instrument has been prepared using Times New Roman font, 14 point.

/s/ Louis K. Bonham
Louis K. Bonham

## CERTIFICATE OF SERVICE

I certify that on August 13, 2010, the foregoing document was served on counsel for Plaintiff by ECF or regular United States mail, postage prepaid, as follows:

Christopher G. Moorman
Moorman Pieschel LLC
One Midtown Plaza, Suite 1205
1360 Peachtree Street, NE
Atlanta, Georgia 30309

David George
Connelly Baker Wotring LLP
700 JPMorgan Chase Tower
600 Travis Street
Houston, Texas  77002

/s/ Louis K. Bonham
Louis K. Bonham