IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**FILED IN CHAMBERS**
U.S.D.C. Atlanta

MAY 2 0 2011

JAMES N. HATTEN, Clerk

By: _Mucall_ Deputy Clerk

DUSTIN S. KOLODZIEJ,

    Plaintiff,

v.

JAMES CHENEY MASON and J.
CHENEY MASON, P.A.,

    Defendants.

CIVIL ACTION NO.

1:10-CV-2012-JEC

## ORDER & OPINION

This case is presently before the Court on defendants' Motion to Dismiss or Transfer Venue [11] and plaintiff's Motion for Leave to File a Surreply in Opposition to Defendants' Motion [17]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion to Dismiss or Transfer Venue [11] should be **GRANTED in part** and **DENIED in part** and plaintiff's Motion for Leave to File a Surreply [17] should be **DENIED**.

## BACKGROUND

This case arises from the breach of an alleged unilateral contract between plaintiff and defendant James Cheney Mason. Defendant Mason is a criminal defense attorney who works and resides in Florida. (Compl. [1] at ¶¶ 2-8.) Plaintiff is a recent law school graduate who resides in Texas. (*Id.* at ¶¶ 1, 17.) Defendant

J. Cheney Mason, P.A. is defendant Mason's professional organization and is a Florida corporation with its principal place of business in Orlando, Florida. (*Id.* at ¶¶ 3, 7.)

The underlying facts of the case originated with defendant Mason representing Nelson Serrano ("Serrano") in a capital murder trial in Florida. (*Id.* at ¶ 9.) Serrano's defense was that he could not have been the killer because he was in Atlanta on the day of the crime, a fact evidenced by his appearance in a surveillance video at the Atlanta La Quinta hotel a few hours after the homicide. (*Id.* at ¶ 10.) According to Serrano, the timeline would have required him to travel from the Atlanta airport to the La Quinta hotel in 28 minutes, which he claims was impossible. (Compl. [1] at ¶ 10.) The jury rejected Serrano's defense and sentenced him to death in 2007. (*Id.* at ¶ 11.)

The Serrano trial generated significant publicity, including a nationally aired segment on the television program "Dateline" in December 2006. (*Id.* at ¶ 12.) Defendant Mason was interviewed as part of the "Dateline" broadcast. During the interview, Mason reaffirmed his position that Serrano could not have committed the murder because it would have been impossible to travel from the Atlanta airport to the La Quinta hotel within 28 minutes. (*Id.* at ¶ 13.) He subsequently made the following statement: "I challenge anybody to show me, I'll pay them a million dollars if they can do it." (*Id.* at ¶ 14.)

Plaintiff, then a law student at South Texas College of Law, had been following the Serrano case. (Compl. [1] at ¶ 17.) He observed the remarks that Mason made on "Dateline" and undertook to meet his million dollar challenge. (*Id.* at ¶ 18.) In December 2007, plaintiff retraced Serrano's alleged route, flying from Atlanta to Orlando, driving to the scene of the crime, then flying back to Atlanta. (*Id.* at ¶ 18.) Plaintiff was able to go from the Atlanta airport to the La Quinta hotel within 28 minutes. (*Id.*)

Upon returning from his trip, plaintiff sent a recorded video of his journey to Mason, along with a demand letter requesting one million dollars. (*Id.* at ¶ 19.) When Mason declined to satisfy the demand, plaintiff filed this lawsuit. (Compl. [1] at ¶¶ 19-20.) The suit was first filed in the Southern District of Texas. (Order of Oct. 22, 2009, attached to Defs.' Mot. to Dismiss [11].) That action was dismissed under Federal Rule 12(b)(2) for lack of personal jurisdiction. (*Id.*) Plaintiff subsequently filed suit in this Court.

In his complaint, plaintiff asserts a claim against defendants for breach of contract. (Compl. [1] at ¶¶ 21-23.) In support of his claim, plaintiff alleges that defendant Mason made an offer to enter into a unilateral contract when he issued the million dollar challenge, and that plaintiff accepted the contract by performing. (*Id.* at ¶ 22.) According to plaintiff, Mason's failure to satisfy the demand constitutes a breach of the contract, entitling plaintiff

to damages. (*Id.* at ¶ 23.)

Defendants have filed a motion to dismiss the action under Federal Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue. (Defs.' Mot. to Dismiss or Transfer [11].) In the alternative, defendants move to transfer the case to the Middle District of Florida under 28 U.S.C. § 1404(a). (*Id.*) Plaintiff has filed a related motion for leave to file a sur-reply. (Pl.'s Mot. to File Surreply [17].) All of those motions are presently before the Court.

## DISCUSSION

## I. Plaintiff's Motion For Leave To File A Surreply

Plaintiff requests leave to file a surreply to defendants' motion in order to (1) avoid running afoul of his duty to cite adverse authority and (2) address arguments supposedly raised for the first time in defendants' reply. (Pl.'s Mot. to File Surreply [17].) Surreplies are not generally allowed in this district. *See Garrison v. NE Georgia Med. Ctr., Inc.*, 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999)(O'Kelley, J.)("to allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs"). Neither is there any particularly good reason to deviate from the general rule here. Contrary to plaintiff's argument, he is not in danger of violating any ethical obligations because the relevant adverse authority has been brought to the Court's attention by defendants. *See* Georgia Rules of Professional

4

Conduct § 3.3(a)(3). Moreover, defendants' reply does not raise any issues that are outside the scope of plaintiff's response.

The Court previously granted plaintiff permission to file ten additional pages to its response to defendants' motion to dismiss. (Order [15].) This allotment should have been sufficient to adequately address the matters before the Court. Plaintiff's motion for leave to file a sur-reply is therefore **DENIED**.

## II. Defendants' Personal Jurisdiction Motion

### A. Applicable Standard

On a motion to dismiss under Federal Rule 12(b)(2), the plaintiff has the burden of establishing a prima facie case of jurisdiction. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). In evaluating the plaintiff's case, the Court accepts as true the allegations in the complaint. *Id.* However, if the defendant contests the allegations through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction." *Id.* Where the plaintiff's complaint and the defendant's affidavits conflict, the Court "must construe all reasonable inferences in favor of the plaintiff." *Id.*

The Court applies a two-part test to determine whether it has personal jurisdiction over a nonresident defendant. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the Court must "examine the jurisdictional issue under

5

the state long-arm statute." *Id.* Second, the Court must determine whether the defendant has sufficient "minimum contacts" to satisfy the Due Process Clause of the Fourteenth Amendment. *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Jurisdiction is only permissible if both parts of the test are satisfied.[1] *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

## B.   The Georgia Long Arm Statute

Georgia's long-arm statute permits the Court to exercise personal jurisdiction over a nonresident who "[t]ransacts any business within th[e] state" as to a cause of action arising out of that transaction. O.C.G.A. § 9-10-91(1). The Eleventh Circuit has interpreted this provision literally, as follows:

> "Transact" means "to prosecute negotiations," to "carry on business," "to carry out," or "to carry on." "Any" means "to any extent" or "in any degree." "Business" means "activity directed toward some end," or "a usually commercial or mercantile activity customarily engaged in as a means of livelihood," or "transactions, dealings, or intercourse of any nature."

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1264-65 (11th Cir. 2010)(internal citations omitted).

At the least, the above language "expressly depends on the

---

[1] Until recently, courts in this district treated the first and second prongs as coextensive. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1254 (11th Cir. 2010). However, the Eleventh Circuit recently noted a shift in Georgia law that requires a separate inquiry as to each prong. *Id.* at 1263 ("courts must apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of . . . the constitutional analysis").

6

actual transaction of [some act of] business . . . by the defendant in the state." *Id.* at 1260 (applying *Innovative Clinical & Consulting Serv., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672 (2005)). However, a defendant need not physically enter the state to "transact any business" here. *Id.* at 1264. "[I]ntangible acts, though occurring while the defendant is physically outside [the state] of Georgia" are relevant. *Id.* For example, a defendant may subject itself to jurisdiction under the Georgia long-arm statute through mailings and telephone calls made from outside but directed to the state. *Id.*

Plaintiff contends that defendant Mason transacted business in Georgia when he entered into a contract that, by its express terms, could only be accepted and performed in Georgia. (Pl.'s Resp. Br. [13] at 14-15.) It is undisputed that Mason did not undertake any physical act in Georgia when he purportedly offered to pay one million dollars to the person who could travel from the Atlanta Airport to the LaQuinta hotel in less than 28 minutes. (*Id.*) However, the Court agrees with plaintiff that the transmission of Mason's challenge into Georgia, as well as the formation of a contract in Georgia, are sufficient to show that Mason transacted some business within the state.

As discussed, a defendant may transact business in Georgia on the basis of "intangible acts" such as telephone, postal, or internet communications made outside of the state. *Diamond Crystal Brands,*

7

*Inc.*, 593 F.3d at 1264. Mason's televised challenge was expressly conditioned on performance in Georgia. As such, Mason's conduct was similar to that of other defendants found subject to jurisdiction based on an offer to enter a contract in Georgia by phone or transmittal of an offer through the mail. *Id.* at 1265 (that purchase orders were routed through a California intermediary does not disqualify them from consideration under the "transacts any business" equation) and *ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga. App. 528, 534 (2009)(jurisdiction under Georgia's long-arm statute may be based on "business conducted through postal, telephonic, and Internet contacts").

In addition, and assuming plaintiff's allegations are true, Mason was a party to a contract that was accepted and completed in Georgia. Under the theory of a unilateral contract, Mason incurred an obligation to pay upon the acceptance and performance of the contract. *See Consol. Freightways Corp. v. Williams*, 139 Ga. App. 302, 306 (1976)(upholding a jury charge instructing that "if and when the plaintiff accepted the offer by performance of the alleged services, there would be a binding contract"). While Mason may not have physically appeared in Georgia, his obligation to pay, and thus a transaction, came to fruition in Georgia. *Id.*

In support of their motion, defendants argue that plaintiff did not complete the contract in Georgia, but in Florida. (Defs.' Reply Br. [16] at 7-9.) The Court is not persuaded. A district court,

8

sitting in diversity, applies the forum state's choice of law rules. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). Georgia follows the traditional rule of *lex loci contractus*, which applies the law of the state where the contract is made. *Id.* Under Georgia law, a contract is made where "the last act essential to the completion of the contract" takes place. *Gen. Tel. Co. of Se. v. Trimm*, 252 Ga. 95, 95 (1984). The "last act" essential to completion of this contract took place in Atlanta, when plaintiff traveled from the Atlanta airport to the LaQuinta hotel.

In entering into a contract that was executed and required to be performed in Georgia, Mason "transacted business" in the state. *See* O.C.G.A. § 9-10-91 (1) and *Diamond Crystal Brands, Inc.,* 593 F.3d at 1264-65. Plaintiff's breach of contract claim arises directly from that transaction. Accordingly, jurisdiction is authorized under the Georgia long-arm statute.

## C. **Federal Due Process**

In addition to complying with the long-arm statute, plaintiff must demonstrate that jurisdiction in this forum comports with due process. Due process is satisfied "if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield v. Pueblo de Bahia Lora, S.A.,* 558 F.3d 1210, 1220 (11th Cir. 2009)(quoting *Helicopteros*

9

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)}. Once a plaintiff shows that the defendant has the requisite contacts, the burden shifts to the defendant to make a "'compelling case' that the exercise of jurisdiction would violate . . . fair play and substantial justice." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267. A defendant's contacts with the forum may give rise to either "general" or "specific" personal jurisdiction. *Oldfield*, 558 F.3d at 1221. Specific jurisdiction is the only type of jurisdiction at issue in this case. In cases involving specific jurisdiction, there is a three-part test to determine if a defendant's contacts with the forum comport with due process: (1) the contacts must be related to the plaintiff's cause of action, (2) they must involve some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum, and (3) they must be of a nature that the defendant should reasonably anticipate being haled into court in the forum. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

## 1. Relatedness

Plaintiff's claim against defendants is directly related to Mason's contacts with Georgia. Specifically, the claim arises out of Mason's offer and alleged breach of a unilateral contract that was executed and could only be accepted by performance in Georgia. (Compl. [1] at ¶¶ 14-20.) Under the facts alleged, there is a sufficient relationship between the asserted claim and Mason's

10

activities in Georgia to support personal jurisdiction. *See Oldfield*, 558 F.3d at 1222 (focusing on the direct causal relationship among the defendant, the forum, and the litigation) and *Sloss*, 488 F.3d at 925 (the relatedness element is satisfied where a party's acts within the forum give rise to the asserted cause of action).

### 2. Purposeful Availment

Defendants argue that Mason did not purposefully avail himself of the benefit of conducting business in Georgia because plaintiff's actions in the state were undertaken without Mason's knowledge or consent. (Defs.' Br. [11] at 15.) This argument ignores the fact that Mason is the one who initially issued the challenge that brought about plaintiff's actions in Georgia. Plaintiff alleges that Mason made an offer on a unilateral contract that could only be performed in Georgia. (Compl. [1] at ¶¶ 14-18.) Assuming that allegation is true, Mason, by requiring performance in Georgia, can be charged with contemplating a relationship with and reliance on the laws of this state. *See Sloss*, 488 F.3d at 933 (finding purposeful availment where the defendant was "more than a mere passive purchaser").

Defendants point to *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802 (11th Cir. 2010) and *Francosteel Corp. v. M/V Charm*, 19 F.3d 624 (11th Cir. 1994) as examples of cases where a contract requiring an act of performance in the forum was insufficient to establish minimum contacts. However, both cases are

11

distinguishable. In *PVC Windoors*, the contract was to be performed in another country, not the forum state. *PVC Windoors, Inc.,* 598 F.3d at 804-805. Similarly, the contract in *Francosteel* only called for delivery of certain cargo in the forum state, with none of the events giving rise to the cause of action actually occurring in the forum. *Francosteel,* 19 F.3d at 628.

Unlike the contracts at issue in *PVC Windoors* and *Francosteel*, the contract here was not only performed in Georgia, but could only have been performed in Georgia pursuant to Mason's offer. In issuing such an offer, Mason impliedly, but intentionally, invoked the privilege of conducting activities in Georgia and the protection of Georgia contract law. The "purposeful availment" requirement is therefore met. *See Sloss,* 488 F.3d at 933.

### 3.  Reasonable Anticipation

Finally, the Court finds that defendants could reasonably anticipate being haled into a Georgia court as a result of Mason's conduct. As alleged in the complaint, Mason, in a nationally televised "Dateline" broadcast, issued a million dollar offer on a contract that required acceptance and performance in Georgia. (Compl. [1] at ¶¶ 14-18.) Having issued such an offer, Mason should have expected that the contract might be executed and accepted by a viewer, through performance that could only be accomplished in Georgia. Under the circumstances, defendants could reasonably anticipate being haled into court here. *Id.*

12

### 4.   Fairness Factors

Having concluded that defendants have minimum contacts with Georgia, the Court must consider the contacts in light of other factors to determine whether the assertion of jurisdiction comports with "traditional conception[s] of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985). These factors include:

> [the] burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (internal quotations omitted).

Applying the above factors, defendants have not met their burden of showing that it would be fundamentally unfair to subject them to jurisdiction in Georgia. Litigating in a foreign forum is always somewhat onerous on a defendant, but "[m]odern transportation and communication" have substantially reduced the burden. *Olivier v. Merritt Dredging Co., Inc.*, 979 F.2d 827, 834 (11th Cir. 1992). As demonstrated by plaintiff's response to the million dollar challenge, one may travel from Florida to Atlanta with relative ease. Moreover, the contract at issue was formed in Georgia and is governed by Georgia law, which at least to some extent implicates Georgia's interest in adjudicating the dispute. *Psychological Res. Support Sys., Inc. v. Gerleman*, 624 F. Supp. 483, 487 (N.D. Ga. 1985)(Moye,

13

J.). Finally, there is no reason to expect that a Georgia court would afford any less effective relief than a Florida court.

In short, defendants have not presented a "compelling case" that jurisdiction in Georgia would "violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc.,* 593 F.3d at 1267. All of the relevant fairness factors are either neutral, or weigh only slightly in favor of defendants. The Court thus concludes that the requisites of due process are met, and **DENIES** defendants' motion to dismiss for lack of personal jurisdiction.

## III. **Motion to Dismiss for Improper Venue**

In addition to Rule 12(b)(2), defendants seek dismissal for improper venue under Rule 12(b)(3). Venue for this action is governed by the general venue statute, which provides that:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

28 U.S.C. § 1391(a)(2). Applying this provision, the Eleventh Circuit has recognized that there may be cases in which venue will be proper in more than one district. *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1371 (11th Cir. 2003).

The parties dispute whether "a substantial part of the events" giving rise to plaintiff's claim occurred in Georgia. Defendants argue that Florida, not Georgia, is the state where a "substantial part of the events" occurred. (Defs.' Br. [11] at 19.)

14

Specifically, defendants argue that Florida is the location where the initial offer and the alleged breach of contract took place. (*Id.*) Defendants cite evidence showing that Mason was in Florida when he extended the challenge, and that he refused to pay plaintiff from correspondence originating from Florida. (*Id.*)

While many of the events necessary to plaintiff's cause of action occurred in Florida, a "substantial" part of the events, including the formation and performance of the contract, also occurred in Georgia. As discussed below, the Northern District of Georgia is not the only district in which venue is proper. However, this district meets the requirements of the federal venue statute, 28 U.S.C. § 1391(a)(2). Accordingly, defendants' motion to dismiss for improper venue is **DENIED**.

## IV. Motion to Transfer

As an alternative to dismissal, defendants ask the Court to transfer this action to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). That statute provides that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The moving party bears the burden of establishing the propriety of a transfer under § 1404(a). *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

Under the express language of the statute, a transfer of venue

15

is only available if the proposed transferee forum is a district where the case "might have been brought." 28 U.S.C. § 1404(a). The Middle District of Florida is a district where the case "might have been brought" under the general venue statute, 28 U.S.C. § 1391(a). That statute permits venue in "a judicial district where any defendant resides." 28 U.S.C. § 1391(a). As noted above, defendant J. Cheney Mason, P.A. resides in Orlando, Florida, which is located in the Middle District of Florida. (Compl. [1] at ¶¶ 3, 7.)

Having properly identified an alternate forum, three general criteria determine whether a transfer is appropriate: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988). These general considerations may be expanded to include the following: (1) the location of relevant documents and the relative ease of access to sources of proof, (2) the locus of operative facts, (3) the availability of process to compel the attendance of unwilling witnesses, (4) the relative means of the parties, (5) a forum's familiarity with the governing law, and (6) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). In this case, the relevant factors favor transfer.

## A.   The Convenience Of The Witnesses

The convenience of the witnesses is one of the most important

16

factors in evaluating a motion to transfer venue, with the main focus on "key witnesses." *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004)(Thrash, J.). "Key witnesses" are those who have information regarding the liability of defendant. *Id.* at 1357. Further, a distinction is made between party witnesses and nonparty witnesses. *Id.* at 1356. Party witnesses are presumed to be willing to testify in a different forum, while nonparty witness are not. *Id.* The convenience of nonparty witnesses holds more weight than that of party witnesses in evaluating the convenience of the forum. *Id.*

Defendants offer three nonparty witnesses who are not residents of Georgia. The first two witnesses were present at the interview in question and are residents of Florida. (Mason Decl. [11] at ¶¶ 2-3, 28-29.) The producer for the interview is a resident of New York. (*Id.* at ¶ 29.) Apparently, witnesses who were present at the interview will be needed to give a description of the unedited interview and the overall context of Mason's statements. (Defs.' Reply Br. [16] at 12.) These witnesses are directly relevant to defendants' liability, as their testimony would be used to determine if Mason made a viable offer.

In response, plaintiff offers unnamed Delta Air Lines or Atlanta airport employees as nonparty witnesses needed to verify the exact time the airplane touched down. (Pl.'s Resp. [13] at 26-27.) However, live testimony need not be offered to establish this fact,

17

a matter of official record that is likely subject to stipulation or judicial notice. Moreover, plaintiff alleges in his complaint that his journey was videotaped, providing another source of evidence as to the timing of plaintiff's journey. (Compl. [1] at ¶ 19.)

Plaintiff does not identify any other nonparty witnesses who reside in Georgia. (Pl.'s Resp. [13].) The lack of witnesses in Georgia, set against the presence of key nonparty witnesses residing in Florida, weighs heavily in favor of transfer to the Middle District of Florida. *See England,* 856 F.2d at 1519 and *Ramsey,* 323 F. Supp. 2d at 1356.

## B. The Convenience Of The Parties

When evaluating the relative convenience of the parties, "[t]ransfer should be denied if it would merely shift inconvenience from one party to another." *Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa*, 245 F. Supp. 2d 1248, 1260 (N.D. Ga. 2002)(Martin, J.). However, in this case none of the parties lives or works in Georgia. Both defendants reside in Florida, and plaintiff resides in Texas. Because defendants are in Florida, a transfer to that venue would certainly be more convenient for them. Further, plaintiff will have to travel to litigate this matter regardless of whether the litigation is in Florida or Georgia, and as plaintiff has averred, the difference in travel time by air is less than thirty minutes. (Kolodziej Decl. [13] at ¶ 9.) Because plaintiff has chosen a forum that is inconvenient for all the parties, this factor weighs heavily

18

in favor of defendants.

## C.   **The Weight Accorded Plaintiff's Choice Of Forum**

In evaluating a motion to transfer, "[t]he plaintiff's statutory privilege of choosing his forum is a factor, held in varying degrees of esteem, to be weighed against other factors in determining the most convenient forum." *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970).[2] Although not yet addressed by the Eleventh Circuit, several courts in this district have found that when the forum is not the home district for any of the parties involved in the action, "plaintiff's original choice of forum is entitled to less weight." *Haworth, Inc. v. Herman Miller, Inc.*, 821 F. Supp. 1476, 1479 (N.D. Ga. 1992)(Forrester, J.). *See also Ramsey,* 323 F. Supp. 2d at 1352 (holding same). Thus, plaintiff's choice of forum is arguably entitled to less weight in this case than if plaintiff had filed suit in the state where he resides.

## D.   **Trial Efficiency And The Interests Of Justice**

Defendants claim that the "median time from filing to trial for civil cases in the Northern District of Georgia was 26.6 months in 2009, as compared to 22.6 months in the Middle District of Florida." (Defs.' Br. [11] at 24.) Plaintiff argues that this difference is negligible. (Pl.'s Resp. [13] at 32.) However, the Court suspects

---

[2]   In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

that the disparity in resolution time is now greater than it was in 2009.  The Administrative Office of the U.S. Courts has declared a judicial emergency in the Northern District of Georgia because three active judicial positions have been vacant for two years and court filings average from 500 to 700 per judge.  Administrative Office of the U.S. Courts, *Judges and Judgeships: Judicial Emergencies*, www.uscourts.gov/JudgesAndJudgeships/JudicialVacancies  (Feb.  11, 2011).[3]  The Court has little doubt that this matter will be brought to a more speedy resolution in the Middle District of Florida.  This factor thus weighs in favor of transfer.

**E.  The Remaining Factors And Conclusion**

The remaining factors are neutral.  Relevant documents and other sources of proof, including the "Dateline" interview and plaintiff's documentary evidence of his journey, can be found in Georgia, Florida, Texas and perhaps New York.  The locus of operative facts is similarly spread evenly among three states.  The relative means of the parties is not a significant factor, given that both parties will have to travel to litigate the case in Georgia.

The determinative factors, including the convenience of the parties and particularly the witnesses, overwhelmingly weigh in favor of transfer.  As none of the parties or witnesses have any real connection to the forum, transfer is particularly appropriate here.

---

[3]  Since issuance of the report, two vacancies have been filled, but two more vacancies remain, with one vacancy having lasted almost two and one-half years and the other for over one year.

20

While the minimum requirements of the Georgia long-arm statute and due process would permit the Court to hear plaintiff's claim, the interests of justice would be better served by resolution of this matter in the Middle District of Florida, where defendants and several key witnesses reside and where Mason's challenge was issued. Defendants' motion to transfer is thus **GRANTED**.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Leave to File Surreply [17] is **DENIED**, and defendants' Motion to Dismiss or Transfer [11] is **GRANTED in part** and **DENIED in part**. The Clerk is directed to transfer this action to the United States District Court for the Middle District of Florida, Orlando Division.

SO ORDERED, this $\underline{20}$ day of May, 2011.

JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE